IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

ANTHONY LEROY JONES, §
      Petitioner, §
§
V. § Civil Action No. 4-18-CV-334-O
§
LORIE DAVIS, Director, §
Texas Department of Criminal Justice, §
Correctional Institutions Division, §
      Respondent. §

## OPINION AND ORDER

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner, Anthony Leroy Jones, a state prisoner confined in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ), against Lorie Davis, director of that division, Respondent. After considering the pleadings and relief sought by Petitioner, the Court has concluded that the petition should be denied.

## I. BACKGROUND

In 2012 Petitioner was indicted in Tarrant County, Texas, Case Nos. 1297281D and 1297869D, on two counts of aggravated robbery with a deadly weapon. 1Clerk's R. 7, ECF No. 12-1; 2Clerk's R. 7, ECF No. 12-2.[1] Both indictments included a habitual-offender notice. On February 24, 2014, pursuant to a plea agreement, Petitioner entered open pleas of guilty to two counts of the lesser-included offense of robbery by threats and true to the habitual-offender notices and the state waived the deadly-weapon allegations. 1Clerk's R. 109, ECF No. 12-1; 2Clerk's R. 104, ECF No. 12-2. Petitioner elected a jury to assess his punishment. At the conclusion of his jury trial on

---

[1] "1Clerk's R." refers to the clerk's record in Case No. 1297281D; "2Clerk's R." refers to the clerk's record in Case No. 1297869D.

punishment, the jury assessed his punishment at 60 years' confinement in each case, the sentences to run concurrently. Petitioner's convictions were affirmed on appeal. He did not file a petition for discretionary review or seek writ of certiorari. Pet. 3, ECF No. 1. He did however challenge his convictions in two relevant post-conviction state habeas-corpus applications, which were denied by the Texas Court of Criminal Appeals without written order on the findings of the trial court.

## II. ISSUES

In this federal petition, Petitioner raises the following three grounds for relief:

(1) the trial court "abused its discretion by not sua sponte conducting a competency hearing 1) after Petitioner's plea-bargain stage; 2) before denying [Petitioner's] motion for continuance; and 3) before accepting [Petitioner's] guilty plea[s]";

(2) Petitioner's refusal of a 20-year plea offer was "due to: 1) his mental confused state of mind induced by his numerous psychiatric medications side-effects; and 2) ineffective assistance of counsel[,]" entitling him to a "second chance" at the 20-year plea offer; and

(3) Petitioner was denied effective assistance of counsel "when [counsel] failed to investigate Petitioner's mental history and present as substantial mitigating evidence to establish a defense of mental instability at the time of the offense" to the jury.

*Id.* at 6-7.

## III. RULE 5 STATEMENT

Respondent believes that Petitioner has exhausted his claims in state court and that the petition is neither untimely nor subject to the successive-petition bar. Resp't's Answer 5 & n.3, ECF No. 15; Pet'r's Mem. 2-3, ECF No. 2; Pet'r's App. Exs. 4 & 5, ECF No. 3.

## IV. STANDARD OF REVIEW

A § 2254 habeas petition is governed by the heightened standard of review provided for by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary

to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. *Harrington v. Richter,* 562 U.S. 86, 100-01 (2011); 28 U.S.C. § 2254(d)(1)–(2). Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. It is the petitioner's burden to rebut the presumption of correctness through clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Finally, when the Texas Court of Criminal Appeals, the state's highest criminal court, denies relief on a state habeas-corpus application without written order, typically it is an adjudication on the merits, which is likewise entitled to this presumption. *Richter,* 562 U.S. at 100; *Ex parte Torres,* 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). In such a situation, a federal court "should 'look through' the unexplained decision to the last related state-court decision providing" particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision. *Wilson v. Sellers,* --- U.S. ---, 138 S. Ct. 1188, 1191-92 (2018).

**V. DISCUSSION**

Relevant to all three grounds is the testimony of Petitioner's trial counsel, Patrick Curran and Daniel Cleveland. Curran responded to Petitioner's claims in an affidavit filed in the state habeas proceedings as follows (any spelling, punctuation, and/or grammatical errors are in the original):

> I . . . was the first chair trial attorney for [Petitioner]. My second chair was attorney Dan Cleveland. I was appointed to represent [Petitioner] on September 21, 2012. I brought attorney Dan Cleveland into the case about February 2014, the month the case was tried to a jury after an open plea of guilty to two robberies with habitual offender notices.

3

[Petitioner] alleges three grounds of the writ:

1. That the trial court abused its discretion by not sua sponte conducting a competency hearing after [Petitioner]'s plea bargain stage and before his denial for a continuance and before accepting his guilty plea. He alleged that this violated his 14th Amendment Due Process right of the US Constitution.

2. [Petitioner]'s refusal of the twenty years prison plea offer was due to his mentally confused state of mind induced by his numerous psychiatric medication side effects and to the ineffective assistance of counsel. He alleged that these two things entitle him to a second chance at the twenty years in prison plea offer.

3. Trial counsel provided ineffective assistance of counsel when he failed to investigate [Petitioner]'s mental history to allow substantial mitigating evidence to establish [Petitioner]'s instability at . . . the time of the offense.

[Petitioner]'s first ground is further explained in his application for a writ . . . . The trial judge did not abuse his discretion in not conducting a competency hearing or inquiry and did not abuse its discretion for not ordering a psychologist to examine [Petitioner] for competency. I told the trial judge that I got an expert in psychology appointed to assist me in the defense of [Petitioner] and any mitigation needed. I told the court that the psychologist first had to determine that [Petitioner] was competent before doing anything else. I told the trial judge that my expert did find [Petitioner] competent and that I believed [Petitioner] was competent. I reviewed the record of the pre-trial discussions . . . . The transcripts reveal [Petitioner] was competent by answering the questions appropriately. [Petitioner] testified at his trial and appeared competent on the stand. The trial judge did not abuse his discretion in not conducting a competency hearing or review [nor] did the judge error in not ordering a competency evaluation.

[Petitioner]'s second ground is that he refused the plea bargain offer of twenty years in prison because he was confused due to his numerous psychiatric medication side effects. He further alleges in this ground that his attorney provided ineffective assistance of counsel. He claims he should get another chance to accept the twenty years in prison offer. [Petitioner] did not mention to me, his first chair lawyer, that he was having side effects of his medication that affected his ability to understand me or the plea bargain. At no time did anyone tell me that [Petitioner] was having trouble understanding the plea bargain process. [Petitioner] was first offered twenty-five years in prison plea bargain offer on November 12, 2012 court date by Assistant District Attorney Jim Hudson. I told [Petitioner] about that offer on that court date.

4

[Petitioner] did not want that offer. I explained to him that was the range of punishment by law. [Petitioner] seemed to understand the offer and his range of punishment. On [Petitioner]'s status conference court date of April 1, 2013 he was offered 20 years in prison. I told [Petitioner] about the offer that day and recommended he take that offer. [Petitioner] understood that offer but refused the offer. I told [Petitioner] that even if the aggravated robbery charges were dropped to robbery because a BB gun was used in the robbery, he still would be facing a minimum of 25 years in prison and up to 99 years or life in prison because he was charge with be a habitual offender. He understood all that but did not want the plea offer. Again on a May 28, 2013 court date [Petitioner] turned down another offer of 20 years in prison against my advice. That same court date [Petitioner] was then offered 18 years in prison. He also turned down that plea bargain offer against my advice. On his June 10, 2013 court date [Petitioner] again was offered 18 years in prison and turned down that offer against my advice. All the above offers were made by the same above prosecutor. Each was offered on a court date. I made the offer to [Petitioner] that same court date and recommended [Petitioner] take the offers. He declined each offer against my advice. He understood the offers and never expressed to me any problems understanding me nor any problems because [of] side effects of his medications or any other reason. I repeatedly told [Petitioner] on the above court dates that even if he were found guilty of only robbery because he used a BB gun, he would still be facing 25 years in prison to 99 years or life because he was charged as a habitual offender.

[Petitioner]'s third ground is that the trial counsel provided ineffective assistance of counsel when I failed to investigate [Petitioner]'s mental history to allow substantial mitigating evidence. The DVD of the court reporters record contains my experts report and addendum. . . . The report points out the numerous mental health records of [Petitioner] that I got, read and gave to my expert psychologist Dr. Jim Womack. Dr. Womack read these and did testing on [Petitioner]. HE determined that [Petitioner] was not insane at the time of the alleged offenses. For trial strategy reasons I only admitted the Tarrant County MHMR records in mitigation because the other records would probably have done more harm to [Petitioner] than good. There were references that [Petitioner] cut cats heads off and he considered decapitating people. He even considered killing his brother and female friend, both of whom he loved. Those records show a violent and dangerous aspect of [Petitioner]. I did not call my expert psychologist Dr. Womack as a witness in mitigation because Dr. Womack's report. I talked to Dr. Womack about his report and findings and he said there was a strong indication that [Petitioner] exaggerated his mental health problems. He felt [Petitioner] was malingering and had a history of malingering. He determined that [Petitioner]'s recorded history and in what [Petitioner] told the doctor reflects a likely mental illness that finds expression through antisocial behaviors which in turn are reflective of [Petitioner]'s character. Dr. Womack reasoned that [Petitioner]'s criminality is primarily a function of early learning and

> not attributable to his mental illness. For trial strategy reasons, I felt that Dr. Womack's testimony would do more harm to [Petitioner] than good. I did admit the Tarrant County MHMR mental health records because they did not mention much of the dangerous things [Petitioner] considered doing to people that the other mental health records did. The Tarrant County MHMR records contained diagnosis, psychiatric medications and many things about [Petitioner]'s mental health. The direct examination of [Petitioner] discussed [his] mental health problems. [Petitioner]'s diagnosis for schizoaffective disorder, history of prior psychiatric problems and psychotropic medications are mentioned . . . in the MHMR report admitted into evidence. In closing argument . . . I argued [Petitioner]'s mental health problems were mitigation evidence the jury should consider. For trial strategy reasons that I just mentioned, the only mental health records I had admitted in trial were his Tarrant County MHMR records to keep out the evidence of [Petitioner]'s dangerous actions off cutting off cats heads, thinking of killing people and loved ones and even decapitating people.
>
> My other efforts to represent [Petitioner] were to get an investigator David Marlow appointed to assist me in the case. I gave Mr. Marlow all of the police reports and other discovery the District Attorney's gave me. I discussed all the discovery with [Petitioner]. I met with [Petitioner] seven times in the jail. We discussed the cases in detail including all the police reports and discovery. We discussed all the offers and plea bargaining. We discussed the range of punishment. We discussed his mental health records and history and using it as insanity defense and mitigation. I talked to him about the BB gun and how that could change the aggravated robberies to robberies but there would still be a habitual offender notice with robberies on both cases. I talked to him eight times collect on the phone when he was in jail to discuss the cases. He was in jail the whole time I represented him. He had numerous court dates before the trial date in which we discussed the case in the holdover cells. [Petitioner] only wanted his friend Carrie Ross to come to his trial and testify. She said on lived in Houston and could not come to Fort Worth to testify. My investigator tried to get [Petitioner]'s sister to come to court but she would not return over 10 calls to her after the initial call where she said she lived in the Houston and did not have a car to come to the trial.

03SHR 63-66, ECF No. 12-23 (record citations omitted). Daniel Cleveland testified similarly by affidavit. *Id.* at 67-69.

Under his first ground, Petitioner claims that the trial court abused its discretion by failing to sua sponte conduct a competency hearing before, during, or after the guilty-plea stage. Pet. 6, ECF No. 1. Based on counsel's affidavits and the documentary record, the state habeas court entered the

following factual findings relevant to the claim:

7. [Petitioner] presents no new evidence of his mental health history.

8. [Petitioner] was ordered evaluated for mental illness and mental retardation on September 24, 2012.

9. On September 26, 2012, the trial court was notified that [Petitioner] had been evaluated by a qualified mental health professional and the professional found that there was no "clinical evidence to support a belief that [Petitioner] may be incompetent to stand trial."

10. On September 26, 2012, the trial court was notified that the qualified mental health professional concluded there was no need for [Petitioner] to "undergo a complete competency examination."

11. [Petitioner]'s psychological evaluation was submitted to the trial court on February 24, 2014.

12. [Petitioner]'s MHMR record were [sic] presented to the jury during the punishment phase on February 25, 2014.

13. Prior to trial, [Petitioner]'s counsel advised the trial court that [Petitioner]'s own chosen expert found [Petitioner] competent to stand trial.

14. Both [Petitioner]'s counsel found [Petitioner] to be competent.

15. [Petitioner]'s counsel's expert psychologist found that [Petitioner] was malingering and had a history of malingering.

16. There is no evidence that [Petitioner] did not have sufficient present ability to consult with his lawyers with a reasonable degree of rational understanding at the time of trial.

17. There is no evidence that [Petitioner] did not have a rational as well as factual understanding of the proceedings against him at the time of trial.

18. [Petitioner]'s claim that the trial court should have conducted a competency hearing sua sponte is without merit.

03SHR 2, ECF No. 12-23 (record references omitted).[2]

Based on its findings, and applying only state law, the state court entered the following legal conclusions:

> 3. "Art. 46B.003. INCOMPETENCY; PRESUMPTIONS.
> (a) A person is incompetent to stand trial if the person does not have:
> (1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or
> (2) a rational as well as factual understanding of the proceedings against the person.
> (b) A defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence."
>
> 4. A trial court must make an informal inquiry concerning the defendant's competency if the evidence raises a "bona fide doubt" in the court's mind as to the defendant's competency to stand trial.
>
> 5. Because [Petitioner]'s own doctor found him competent to stand trial, [Petitioner] has failed to prove that the trial court erred by not ordering a mental competency hearing *sua sponte.*

*Id.* at 78 (citations omitted).

The conviction of a mentally incompetent defendant violates constitutional due process. *Pate v. Robinson,* 383 U.S. 375, 378 (1966); *Mata v. Johnson,* 210 F.3d 324, 329 (5th Cir. 2000). As articulated by the United States Supreme Court, the test to determine a person's competency to stand trial is "whether he has the sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States,* 362 U.S. 402, 402 (1960). A court must sua sponte conduct an inquiry into a defendant's mental capacity if the evidence raises a bona fide doubt

---

[2] "03SHR" refers to the record in Petitioner's habeas proceeding in WR-85,318-03. Identical findings and legal conclusions were entered in his habeas proceeding in WR-85,318-04.

as to the defendant's competency at that time. *Drope v. Missouri,* 420 U.S. 162, 180 (1975). Texas has clearly adopted the same rule, but adds that a "defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence." TEX. CODE CRIM. PROC. ANN. art. 46B.003 (West 2006).

  Petitioner fails to meet this burden. He offers no medical or psychiatric records to refute the state court's determination that he was competent to enter his guilty pleas. And, the record and reliable evidence tend to refute his claim. Petitioner was fully admonished in writing and in open court and acknowledged in each instance that he was mentally competent and aware of the charges and the consequences of his pleas. Reporter's R., vol. 2, 41, ECF No. 12-4; 1Clerk's R. 112, ECF No. 12-1. His pleas were made with counsel's consent and belief that Petitioner understood his rights and waivers and was capable of consulting with counsel in his defense at the time of the pleas. Reporter's R., vol. 2, 41, ECF No. 12-4; 1Clerk's R. 112-13, ECF No. 12-1. Additionally, the trial court accepted Petitioner's pleas having questioned him and observed his demeanor at the time of the pleas. Reporter's R., vol. 2, 27-45, ECF No. 12-4. Dr. Womack's opinion further negates Petitioner's claim that he was mentally incompetent or that he was under the influence of medication that rendered him incompetent to enter his pleas. In fact, there were no red flags suggesting Petitioner's competency was in question. Petitioner has not demonstrated objective facts known to the trial court which would have signaled a bona fide doubt as to his competency when he entered his pleas. His self-serving assertions, after the fact, are in and of themselves insufficient. *See Drinkard v. United States,* 302 F.3d 279, 284 (5th Cir. 2011) (giving statements during plea colloquy greater weight than "unsupported, after-the-fact, self-serving revisions"). *See also, e.g., Panuccio v. Kelly,* 927 F.2d 106, 109 (2d Cir. 1991) (a defendant's testimony after the fact suffers from

9

obvious credibility problems). Petitioner is not entitled to relief under his first ground.

Under his second ground, Petitioner claims that his refusal of the 20-year plea bargain offer was due to his mentally-confused state of mind and the ineffective assistance of counsel. Pet. 6, ECF No. 1. Based on counsel's affidavits and the documentary record, the state habeas court entered the following factual findings relevant to the claim:

19. On November 12, 2012, the State made its first plea offer of twenty-five years.

20. Mr. Curran discussed with [Petitioner] the November plea offer and the range of punishment.

21. [Petitioner] appeared to understand the November plea offer and the applicable range of punishment.

22. On April 1, 2013, the State extended a twenty year plea offer.

23. [Petitioner] presents no evidence to support his claim that he was not in a proper state of mind on April 1, 2013, when he refused the twenty year plea offer.

24. [Petitioner] presents no evidence to support his claim that he was confused on April 1, 2013, when he refused the twenty year plea offer due to medication side effects.

25. [Petitioner] did not mention to his attorneys that he was experiencing side effects of his medication.

26. [Petitioner] did not mention to his attorneys that he did not understand the plea bargain offer.

27. No one mentioned to [Petitioner]'s attorneys that [Petitioner] was having trouble understanding the plea bargain process.

28. Counsel advised [Petitioner] of the twenty year plea offer and recommended he take it.

29. Counsel advised [Petitioner] that he would be facing a minimum of twenty-five years if convicted at trial because he was charged as a habitual

10

offender.

30. [Petitioner] understood the twenty year plea offer but refused it.

31. On May 28, 2013, [Petitioner] turned down another offer of twenty years and then an offer of eighteen years against the advice of counsel.

32. [Petitioner] presents no evidence to support his claim that he was not in a proper state of mind on May 28, 2013.

33. [Petitioner] presents no evidence to support his claim that he was confused on May 28, 2013.

34. On June 10, 2013, [Petitioner] turned down another offer of eighteen years against the advice of counsel.

35. There is no credible evidence that [Petitioner] refused the State's plea offer because he was confused due to his medication.

36. There is no credible evidence that [Petitioner] did not understand the plea offer or the plea process.

37. [Petitioner]'s claim that his refusals of the State's plea offers were not knowingly made is without merit.

38. Counsel's advice regarding the State's plea offers was the result of reasonable trial strategy.

39. [Petitioner]'s claim that his refusals of the State's plea offers was the result of ineffective assistance of counsel is without merit.

03SHR 74-75, ECF No. 12-23 (record references omitted).

Based on its findings, and applying only state law, the state court entered the following legal conclusions:

7. "[T]o establish prejudice in a claim of ineffective assistance of counsel in which a defendant is not made aware of a plea-bargain offer, or rejects a plea-bargain because of bad legal advice, the applicant must show a reasonable probability that: (1) he would have accepted the earlier offer if counsel had not given ineffective assistance; (2) the prosecution would not have withdrawn the offer; and (3) the trial court would not have refused to

> accept the plea bargain."
>
> 8. [Petitioner] has failed to prove that he was not in his right mind when he refused the State's plea offers.
>
> 9. [Petitioner] has failed to prove that counsel should not have allowed him to refuse the State's plea offers because [Petitioner] was experiencing side effects as a result of his medication.
>
> 10. [Petitioner] has failed to prove that he rejected a plea offer because of bad legal advice.
>
> 11. [Petitioner] has failed to prove that he would have accepted the State's plea offers but for ineffective assistance of counsel.

*Id.* at 79 (citations omitted).

Petitioner presents no evidence that would undermine the presumption of correctness to which the state court's factual findings are entitled. Therefore, deferring to the state court's findings, its determination of the claim was not an unreasonable determination of the evidence. Clearly, the state court found counsel's sworn testimony credible. Such credibility determinations by the state court must be afforded deference. *See Carter v. Collins,* 918 F.2d 1198, 202 (5th Cir. 1990) ("a state court may evaluate an ineffective assistance of counsel claim by making credibility determinations based on affidavits submitted by the petitioner and the attorney"). Petitioner is not entitled to relief under his second ground.

Finally, under his third ground, Petitioner claims that he was denied effective assistance of counsel due to counsel's failure to investigate his mental history and present that history as "substantial mitigating evidence to establish a defense of mental instability at the time of the offense" in mitigation of punishment. Pet. 7, ECF No. 1. A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469

U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Anders v. California*, 386 U.S. 738, 744 (1967). An ineffective-assistance claim is governed by the familiar standard set forth in *Strickland v. Washington*. 466 U.S. at 668. To establish ineffective assistance of counsel under this standard, a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Id.* In the state sentencing context, the relevant inquiry is whether, absent counsel's errors, there is a reasonable probability that the defendant's sentence would have been "significantly less harsh." *Spriggs v. Collins,* 993 F.2d 85, 88-89 (5th Cir.1993), Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance, and a defendant's failure to satisfy one prong of the test negates a court's need to consider the second prong of the analysis. *Id.* at 687, 697.

In applying the *Strickland* standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial or appellate strategy. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where a petitioner's ineffective-assistance-of-counsel claims have been reviewed on their merits and denied by the state courts, federal habeas relief will be granted only if the state court's decision was contrary to or involved an unreasonable application of the *Strickland* standard in light of the state-court record. *Richter,* 562 U.S. at 100-01 (quoting *Williams,* 529 U.S. at 410)); *Bell v. Cone,* 535 U.S. 685, 698-99 (2002). Thus, a federal court's review of state-court decisions regarding ineffective assistance of counsel must be "doubly deferential" so as to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow,* 571 U.S. 12, 15 (2013) (quoting *Cullen v. Pinholster,* 563

U.S. 170, 190 (2011)).

Based on counsel's affidavits and the documentary record, the state habeas court entered the following factual findings relevant to the claim:

40. [Petitioner]'s counsel was appointed an investigator on October 12, 2012.

41. [Petitioner]'s counsel was appointed a psychologist, Dr. Womack, on January 11, 2013.

42. [Petitioner]'s counsel obtained numerous mental health records of [Petitioner] and provided them to Dr. Womack.

43. Dr. Womack evaluated and tested [Petitioner].

44. Dr. Womack concluded that [Petitioner] was not insane at the time of the offenses.

45. [Petitioner]'s counsel only presented [Petitioner]'s Tarrant County MHMR records at trial and none of the other records because they concluded that the other records would have done more harm than good.

46. [Petitioner]'s counsel were concerned that the references in [Petitioner]'s records to him cutting the heads off of cats and his consideration of decapitating people, including his brother and close female friend, would show a violent and dangerous aspect of [Petitioner].

47. [Petitioner]'s counsel presented the Tarrant County MHMR records because they did not mention the dangerous things [Petitioner] considered doing to people that the other mental health records did.

48. Counsel's decision to not have the other mental health records admitted because they showed a violent and dangerous aspect of [Petitioner] was the result of reasonable trial strategy.

49. [Petitioner]'s counsel did not call Dr. Womack as a mitigation expert because Dr. Womack found there was a strong indication that [Petitioner] exaggerated his mental health problems.

50. Dr. Womack concluded that [Petitioner] was malingering and had a history of malingering.

51. Dr. Womack determined that [Petitioner]'s recorded mental health history and [Petitioner]'s self-reporting reflected a mental illness that affected [Petitioner]'s character.

52. Dr. Womack concluded that [Petitioner]'s criminality was primarily a result of his early learning and not attributable to his mental illness.

53. [Petitioner]'s counsel concluded Dr. Womack's testimony would do more harm than good.

54. Counsel's decision to not call Dr. Womack to testify was the result of reasonable trial strategy.

55. [Petitioner]'s counsel used the Tarrant County MHMR records to present [Petitioner]'s mental health diagnoses, prescribed medications, and several other things about [Petitioner]'s mental health.

56. [Petitioner]'s counsel argued [Petitioner]'s mental health problems as mitigation evidence based on [Petitioner]'s testimony and the Tarrant County MHMR records.

57. Counsel properly argued [Petitioner]'s mental health history as part of mitigation evidence.

58. Mr. Curran's affidavit is credible and supported by the record.

59. Mr. Cleveland's affidavit is credible and supported by the record.

60. Counsel properly investigated [Petitioner]'s mental health history.

6.1. Counsel's choice of evidence to demonstrate [Petitioner]'s mental health was the result of reasonable trial strategy.

62. Counsel's representation was the result of reasonable trial strategy.

63. There is no reasonable likelihood that the outcome of the proceeding would have been different but for the alleged misconduct of trial counsel.

03SHR 75-78, ECF No. 12-23 (record references omitted).

Based on its findings, and applying the *Strickland* standard, the state court entered the following legal conclusions:

18. Counsel properly investigated [Petitioner]'s mental health history.

19. Counsel's decision to [offer into evidence] not more than the Tarrant County MHMR records to demonstrate [Petitioner]'s mental health history was the result of reasonable trial strategy.

20. [Petitioner] has failed to prove that his attorney's representation fell below an objective standard of reasonableness.

21. The failure to satisfy one *Strickland* prong negates a court's need to consider the other.

22. A party fails to carry his burden to prove ineffective assistance of counsel where the probability of a different result absent the alleged deficient conduct "sufficient to undermine confidence in the outcome" is not established.

23. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."

24. [Petitioner] has failed to show that there is a reasonable likelihood that the outcome of the proceeding would have been different had counsel investigated more.

25. [Petitioner] has failed to show that there is a reasonable likelihood that the outcome of the proceeding would have been different had counsel presented more evidence of [Petitioner]'s mental health history.

26. [Petitioner] has failed to show that there is a reasonable likelihood that, but for the alleged acts of misconduct, the result of the proceeding would have been different.

27. [Petitioner] has failed to prove that he received ineffective assistance of trial counsel.

*Id.* at 79-81 (citations omitted).

The state court's determination of the claim is not an unreasonable application of *Strickland*. The record reflects that counsel engaged in a thorough investigation of Petitioner's mental health

history, and Petitioner presents no evidence for purposes of determining his mental state at the time of the commission of the offenses. Petitioner's conclusory allegations are insufficient to raise a constitutional issue. *Ross v. Estelle,* 694 F.2d 1008, 1011-12 (5th Cir. 1983). Moreover, counsel's decision to limit evidence of Petitioner's mental history in mitigation of punishment involves a matter of trial strategy. Counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland,* 466 U.S. at 690. Petitioner is not entitled to relief under his third ground.

## VI. EVIDENTIARY HEARING

Petitioner requests a live evidentiary hearing to further develop the record in support of his claims. However, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster,* 563 U.S. 170, 181 (2011). *See also Blue v. Thaler,* 665 F.3d 647, 656 (5th Cir. 2011) (same rule applies to factual determinations under section 2254(d)(2)). Here, as in *Pinholster,* the petition concerns only claims under section 2254(d)(1) that were adjudicated on the merits in state court. Petitioner cannot overcome the limitation of section 2254(d)(1) on the record that was before the state courts. Therefore, he is not entitled to an evidentiary hearing.

## VII. CONCLUSION

For the reasons discussed, Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. §254 is DENIED. Further, for the reasons discussed, a certificate of appealability is DENIED.

**SO ORDERED** on this 6th day of August, 2019.

Reed O'Connor
UNITED STATES DISTRICT JUDGE